**LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO, LOCAL 478, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 73–1819.

United States Court of Appeals, District of Columbia Circuit.

Argued June 3, 1974.

Decided July 10, 1974.

Thomas J. Pilacek, North Miami Beach, Fla., for petitioner.

Patrick Hardin, Associate Gen. Counsel, N. L. R. B., with whom John S. Irving, Deputy Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Robert G. Sewell, Atty., N. L. R. B., were on the brief, for respondent.

Before BAZELON, Chief Judge, and TAMM and LEVENTHAL, Circuit Judges.

PER CURIAM:

The facts of the case are fully developed in the Decision and Order of the National Labor Relations Board.[1]  In brief, members of the Union, laborers at a construction site, went on strike after the employer terminated the temporary appointment of Mr. Davis as assistant foreman, a position that had been created a month earlier when the employer learned of the likely delay in the arrival from another local of the papers certifying the standing of Mr. Wilson, whom the employer had engaged as foreman.[2] The employer concluded that the job did not warrant two supervisors, and Mr. Davis returned to the job of laborer. Next morning the strike began.  When advised by the Union that the strike would end if Davis were reappointed assistant foreman, the employer promptly made the appointment.  Wilson was subsequently discharged since two supervisors were not required for the job.

The Board held that the Union, by insisting upon the reappointment of Davis, violated the proscription of § 8(b)(1)(B) of the National Labor Relations Act (Act), 29 U.S.C. § 158(b)(1)(B), which prohibits a union from restraining or coercing an employer "in the selection of his representatives for the purpose[s] of . . . the adjustment of grievances."  At the hearing before the Administrative Law Judge the Union offered to show that the laborers struck because they objected to racially discriminatory treatment of the black laborers by foreman Wilson, and were willing to continue with him as foreman only if Mr. Davis, a black, served as his assistant and a "buffer." The Administrative Law Judge excluded the proferred evidence, ruling that it was irrelevant to a determination of the § 8(b)(1)(B) violation.  The Union's sole contention on appeal is that the Board erroneously ruled evidence of racial discrimination irrelevant.  The issue is sharpened by the concession of Union counsel at oral argument that but for the alleged racial discrimination, the

---

1. Laborers' International Union of North America, AFL–CIO, Local 478 (International Builders of Florida, Inc.) and L.R. Wilson, 204 NLRB No. 32 (June 22, 1973).

2. The laborers' action began as a wildcat strike, but the union supported the workers, and the union agrees on this appeal that the laborers' actions may be imputed to the union.

facts as the Board found them establish a § 8(b)(1)(B) violation.

The Union argues that the prohibition of § 8(b)(1)(B) must yield to the right of workers to be free of racial discrimination in their employment. The Board responds that the employees may fully assert their right to non-discriminatory treatment, through legal remedies as well as self-help measures protected by Section 7 of the Act, so long as they protest the discriminatory treatment and do not demand the removal or appointment of a particular management "representative." In short, the Board says that protest must be directed, at least in the ordinary case,[3] at the alleged discriminatory conduct, rather than the identity of the supervisor whose conduct is challenged.

We believe the Board's principle is a reasonable harmonization of Sections 7 and 8, and that the principle was properly applied in this case. At oral argument, the union counsel assailed the Board's approach by asserting that the Board would find a § 8(b)(1)(B) violation whenever a union protested discriminatory conduct and the employer responded by replacing the offending supervisor. This does not follow, at least if the employer's replacement of the supervisor represents an independent exercise of his judgment as to the person who would best carry out the employer's obligation to refrain from discriminatory treatment.

Our holding is fully consistent with Western Addition Community Organization v. NLRB, 158 U.S.App.D.C. 138, 485 F.2d 917 (1973), cert. granted, 415 U.S. 913, 94 S.Ct. 1407, 39 L.Ed.2d 466 (1974), which held that the mandate of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., must be taken into account in construing the NLRA. We reaffirm that approach, *see* Southern Steamship Co. v. NLRB, 316 U.S. 31, 47, 62 S.Ct. 886, 86 L.Ed. 1246 (1942).[4] In *Western Addition* the court confronted the need to reconcile § 7 protection of "concerted activity" (even by a minority of employees) with the principle of union exclusive representation embodied in § 8 of the Act; and the court, in light of the policies rooted in Title VII, held minority action protesting racially discriminatory treatment protected by § 7. Here, the Board fully permits employees to engage in § 7 concerted activity challenging alleged discrimination but holds that the specific prohibition of § 8(b)(1)(B) limits the demands that the employees, in the exercise of their rights of concerted activity, may make of their employer. While in *Western Addition* the court had to reconcile two rather generally-drawn statutory provisions, in the case at bar we confront a specific Congressional limitation on a union's use of coercive economic power. Its specificity limits judicial leeway.

Affirmed.

---

3. In its brief the Board states that this case does not present the question whether § 8(b)(1)(B) protects the employer's "deliberate selection of a supervisor so imbued with racial attitudes as to create a discriminatory condition of employment by his mere presence on the job."

4. *See also* Gulf States Utilities Co. v. FPC, 411 U.S. 747, 757–760, 93 S.Ct. 1870, 36 L. Ed.2d 635 (1973); McLean Trucking Co. v. United States, 321 U.S. 67, 79–80, 64 S.Ct. 370, 88 L.Ed. 544 (1944); Northern Natural Gas Co. v. FPC, 130 U.S.App.D.C. 220, 226–228, 399 F.2d 953, 959–961 (1968); City of Pittsburgh v. FPC, 99 U.S.App.D.C. 113, 126, 237 F.2d 741, 754 (1956).